UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

LUIS RAFAEL ALARCON, ESTEVEZ,

        Petitioner,

        v.

JUDITH IETO, Probation Officer,

        Respondent.

No. CV 14-8889-PLA

**MEMORANDUM DECISION AND ORDER**

**I.**

**SUMMARY OF PROCEEDINGS**

On May 7, 2012, petitioner pleaded guilty in the Los Angeles County Superior Court to one count of assault by force likely to produce great bodily injury, in violation of California Penal Code section 245. (Clerk's Transcript ["CT"] 34-37). He was sentenced to 365 days in county jail, plus three years of formal probation (Id.).

Petitioner appealed his conviction. (Respondent's Notice of Lodging Nos. 2-3). On August 29, 2013, the California Court of Appeal affirmed the conviction. (Lodgment No. 4). Petitioner subsequently filed a petition for review in the California Supreme Court, which was denied without comment on November 13, 2013. (Lodgment Nos. 5-6).

On November 17, 2014, petitioner filed his Petition in this Court and consented to have the undersigned Magistrate Judge conduct all further proceedings in this matter. (Docket Nos. 1-2). Respondent, likewise, consented to have the undersigned Magistrate Judge conduct all further proceedings and, thereafter, filed an Answer and a supporting Memorandum of Points and Authorities ("Answer"). (Docket Nos. 26-27). Despite multiple extensions of time to do so, petitioner has not filed a Reply. This matter has now been taken under submission, and is ready for a decision.

## II.

## FACTUAL BACKGROUND[1]

On March 18, 2012, at approximately 2:00 a.m., Jose Morales was walking to his car after leaving work when petitioner approached him and asked about somebody named Israel. (CT 5, 12). Morales did not respond and continued walking. (Id. at 6). Petitioner then grabbed Morales from behind by the collar of his jacket and punched him approximately four times in the face and nose with a closed fist. (Id. at 6-7). Morales fell to the ground, and petitioner repeatedly kicked him "very, very hard" in the ribs and face. (Id. at 7-8). Morales suffered a broken nose, fractured ribs, swollen lips, and bruising throughout his face. (Id. at 8-9). He required treatment at a hospital. (Id.).

## III.

## PETITIONER'S CONTENTIONS[2]

1.   Trial counsel deprived petitioner of his Sixth Amendment right to effective assistance of counsel by failing to advise petitioner that he would be subject to deportation if he pleaded guilty. (Pet. at 5).

---

[1] The following statement of facts is derived from the transcript of petitioner's April 23, 2012, preliminary hearing.

[2] In his Petition, petitioner asserted four claims for relief. (Docket No. 1). Subsequently, however, he dismissed two of those claims because they were unexhausted. (Docket No. 19).

2. Trial counsel deprived petitioner of his Sixth Amendment right to effective assistance of counsel during "court proceedings," and counsel erred during plea negotiations in failing to negotiate a plea deal under which petitioner would not be subject to deportation. (See Pet. at 6).

## IV.

## STANDARD OF REVIEW

The Petition was filed after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"). Pub. L. No. 104-132, 110 Stat. 1214 (1996). Therefore, the Court applies the AEDPA in its review of this action. See Lindh v. Murphy, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Under the AEDPA, a federal court may not grant a writ of habeas corpus on behalf of a person in state custody "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As explained by the Supreme Court, section 2254(d)(1) "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In Williams, the Court held that:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13; see Weighall v. Middle, 215 F.3d 1058, 1061-62 (9th Cir. 2000) (discussing Williams). A federal court making the "unreasonable application" inquiry asks "whether

3

the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409; Weighall, 215 F.3d at 1062. The Williams Court explained that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; accord: Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003). Section 2254(d)(1) imposes a "highly deferential standard for evaluating state-court rulings," Lindh, 521 U.S. at 333 n. 7, and "demands that state court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002) (per curiam). A federal court may not "substitut[e] its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d)." Id.; Early v. Packer, 537 U.S. 3, 123 S.Ct. 362, 366, 154 L.Ed.2d 263 (2002) (per curiam) (holding that habeas relief is not proper where state court decision was only "merely erroneous").

The only definitive source of clearly established federal law under the AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Williams, 529 U.S. at 412. While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law (Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999)), only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied. Williams, 529 U.S. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.), cert. denied, 540 U.S. 968 (2003). Furthermore, under 28 U.S.C. § 2254(e)(1), factual determinations by a state court "shall be presumed to be correct" unless the petitioner rebuts the presumption "by clear and convincing evidence."

A federal habeas court conducting an analysis under § 2254(d) "must determine what arguments or theories supported, or, [in the case of an unexplained denial on the merits], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." Harrington v. Richter, 526 U.S. 86, 101, 131 S.Ct. 770, 178

4

1  L.Ed.2d 624 (2011) ("A state court's determination that a claim lacks merit precludes federal
2  habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's
3  decision."). In other words, to obtain habeas relief from a federal court, "a state prisoner must
4  show that the state court's ruling on the claim being presented in federal court was so lacking in
5  justification that there was an error well understood and comprehended in existing law beyond any
6  possibility for fairminded disagreement." Id. at 103.

7  The United States Supreme Court has held that "[w]here there has been one reasoned
8  state judgment rejecting a federal claim, later unexplained orders upholding that judgment or
9  rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803,
10 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). Here, petitioner presented his first ground for relief on
11 appeal to the California Court of Appeal, which issued a reasoned opinion rejecting that ground.
12 (See Lodgment No. 4). Thereafter, the California Supreme Court summarily denied that ground.
13 (See Lodgment No. 6). Accordingly, this Court reviews the California Court of Appeal's reasoned
14 opinion rejecting petitioner's first ground for relief under AEDPA's deferential standard. See Ylst,
15 501 U.S. at 803; Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000) (district court
16 "look[s] through" unexplained California Supreme Court decision to the last reasoned decision as
17 the basis for the state court's judgment).

18 Petitioner raised his second ground for relief in the petition for review that he filed in the
19 California Supreme Court. (Lodgment No. 5). The California Supreme Court denied that ground
20 without comment or citation. The Court, therefore, reviews that decision to "determine what
21 arguments or theories . . . could have supported . . . the state court's decision; and then [the Court]
22 ask[s] whether it is possible fairminded jurists could disagree that those arguments or theories are
23 inconsistent with the holding in a prior decision of [the Supreme] Court." See Harrington, 562 U.S.
24 at 102; Bemore v. Chappell, 788 F.3d 1151, 1161 (9th Cir. 2015).
25 /
26 /
27 /
28 /

# V.

# **DISCUSSION**

In both of his grounds for relief, petitioner contends that he was deprived of his Sixth Amendment right to effective assistance of trial counsel. First, he maintains that trial counsel performed deficiently by failing to advise petitioner that he would be subject to deportation if he pleaded guilty. (Pet. at 5). Second, petitioner contends that trial counsel provided ineffective assistance of counsel during "court proceedings" and that counsel erred during plea negotiations in failing to negotiate a plea deal under which petitioner would not be subject to deportation. (See Pet. at 6).

### A.     Relevant State Court Opinions

The California Court of Appeal rejected petitioner's first allegation of attorney error on its merits. (Lodgment No. 4). In doing so, the court of appeal stated that the record on appeal showed that petitioner was "advised orally and in writing that the guilty plea could result in his deportation and exclusion from admission to the United States." (Id. at 2). The court of appeal further noted that, before he entered his plea, petitioner signed an advisement of rights form that unequivocally stated that he understood that a guilty plea would result in "'[his] deportation, exclusion from admission or reentry to the United States, and denial of naturalization and amnesty.'" (Id. (citation omitted)). Having reviewed the record, the court of appeal found that "[petitioner's] attorney has fully complied with her responsibilities. . . ." (Id.).

Petitioner did not assert his second ground for relief in the California Court of Appeal. Instead, he raised it for the first time in the petition for review that he filed in the California Supreme Court. (Lodgment No. 5). The California Supreme Court rejected that ground for relief without comment or citation.[3] (Lodgment No. 6).

---

[3] Respondent contends that this claim is unexhausted because it was not properly raised in the petition for review that petitioner filed in the California Supreme Court. (See Answer at 9 n.6). This Court has already found that the claim is exhausted. (Docket No. 18). Nevertheless, the Court notes that, for the reasons explained below, the claim is meritless. Thus, even assuming that the claim is unexhausted, it fails under a de novo standard of review. See Cassett v. Stewart,
(continued...)

6

### B. Federal Legal Standard and Analysis

Petitioner's allegations of ineffective assistance of counsel are governed by the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under the first prong of that test, the petitioner must prove that his attorney's representation fell below an objective standard of reasonableness. Id. at 687-88. To establish deficient performance, the petitioner must show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687; Williams v. Taylor, 529 U.S. 362, 391, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). In reviewing trial counsel's performance, however, courts "strongly presume[] [that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690; Yarborough v. Gentry, 540 U.S. 1, 8, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003). Only if counsel's acts and omissions, examined within the context of all the surrounding circumstances, were outside the "wide range" of professionally competent assistance, will petitioner meet this initial burden. Kimmelman v. Morrison, 477 U.S. 365, 386, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986); Strickland, 466 U.S. at 690.

Under the second part of Strickland's two-prong test, the petitioner must show that he was prejudiced by demonstrating a reasonable probability that, but for his counsel's errors, the result would have been different. 466 U.S. at 694. The errors must not merely undermine confidence in the outcome of the trial, but must result in a proceeding that was fundamentally unfair. Williams, 529 U.S. at 393 n.17; Lockhart, 506 U.S. at 369. The petitioner must prove both deficient performance and prejudice. A court need not, however, determine whether counsel's performance was deficient before determining whether the petitioner suffered prejudice as the result of the alleged deficiencies. Strickland, 466 U.S. at 697.

---

[3](...continued)
406 F.3d 614, 623-24 (9th Cir. 2005) (district court may dismiss unexhausted ground for relief where it is "perfectly clear" that petitioner has not raised colorable federal ground for relief). The same is true as to petitioner's first ground for relief.

7

Here, neither of petitioner's allegations of attorney error warrants habeas relief. First, petitioner cannot show that his counsel failed to advise petitioner that his guilty plea would result in his deportation from the country or that he suffered any prejudice from counsel's performance. To be sure, in Padilla v. Kentucky, 559 U.S. 356, 366, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), the Supreme Court held that a defense counsel performs deficiently by failing to advise the defendant that his plea of guilty makes him subject to automatic deportation. Petitioner, however, offers no evidence -- such as a declaration from counsel or any indication that he attempted to obtain such a declaration from counsel -- to substantiate his claim that counsel failed to inform petitioner of the immigration consequences of his guilty plea.

More importantly, as the court of appeal observed, uncontroverted evidence shows that petitioner *was* advised of the consequences of his guilty plea. Before pleading guilty, petitioner acknowledged that he understood that his guilty plea would result in his deportation by signing the "Felony Advisement of Rights, Waiver, and Plea Form." (CT 33). In particular, petitioner initialed the portion of the waiver form explicitly setting forth the consequences of his guilty plea: "Immigration Consequences -- I understand that if I am not a citizen of the United States, I must expect my plea of guilty or no contest will result in my deportation, exclusion from admission or re-entry to the United States and denial of naturalization and amnesty." (Id. at 32). Petitioner also initialed the portion of the waiver form stating that he "had a full opportunity to discuss with [his] attorney . . . the consequences of [his] plea." (Id.). For his part, trial counsel signed the portion of the waiver form stating that he had reviewed the form with petitioner, answered each of petitioner's questions regarding his rights, and explained to petitioner the consequences of the plea. (Id. at 33). Given this record, the court of appeal reasonably concluded that petitioner had been advised of the consequences of pleading guilty to the charged crime.

Regardless, even assuming that counsel did not advise petitioner of the consequences of his guilty plea, petitioner suffered no prejudice. In the context of plea negotiations, a petitioner cannot show prejudice from his trial counsel's deficient performance unless "there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 369, 88 L. Ed.

2d 203 (1985). Petitioner contends that he would not have pleaded guilty if he had been advised that his guilty plea would result in his deportation. That contention, however, is provably false because, as set forth above, petitioner pleaded guilty even though he was aware that his guilty plea would result in his deportation. (See supra). Moreover, the record shows that, at the hearing regarding petitioner's plea, the trial court explicitly informed petitioner that his conviction would result in deportation and exclusion from admission to the United States. (See CT at 35). Put simply, petitioner knew that his guilty plea could result in his deportation, but he nevertheless pleaded guilty. Accordingly, this claim fails.

Second, there is no merit to petitioner's allegation that counsel erred in failing to negotiate a plea deal under which petitioner would not be subject to deportation. There is nothing in the record to suggest that the prosecutor would have agreed to a plea deal ensuring that petitioner would not be deported. Thus, counsel cannot be faulted for failing to secure such a deal, and petitioner can show no prejudice due to counsel's purported failure to attempt to negotiate such a deal.

Finally, petitioner's remaining allegation of attorney error is meritless. Indeed, other than conclusorily alleging that counsel erred at various stages in the pre-trial process, petitioner provides no evidence to support that allegation. On the contrary, petitioner does not even identify how or why counsel's performance was purportedly deficient. Such conclusory allegations do not warrant habeas relief. See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."); Jones v. Gomez, 66 F.3d 199, 205 (9th Cir. 1995) (habeas relief not warranted where claims for relief are unsupported by facts).

In short, petitioner has not shown that his counsel failed to perform as the counsel guaranteed by the Sixth Amendment. Accordingly, habeas relief is unwarranted on either of petitioner's grounds for relief.

/
/
/

**CERTIFICATE OF APPEALABILITY**

Under Rule 11(a) of the Rules Governing § 2254 Cases, a court must grant or deny a certificate of appealability ("COA") when it denies a state habeas petition. See also 28 U.S.C. § 2253(c).

A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a COA. See 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A COA may issue "only if . . . [there is] a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (citation omitted); see also Sassounian v. Roe, 230 F.3d 1097, 1101 (9th Cir. 2000). Thus, "[w]here a district court has rejected the constitutional claims on the merits, . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484.

The Court concludes that, for the reasons set out above, jurists of reason would not find the Court's assessment of petitioner's claims debatable or wrong. Accordingly, a certificate of appealability is **denied**. Petitioner is advised that he may not appeal the denial of a COA, but if he appeals this Judgment he may ask the Ninth Circuit Court of Appeals to issue a COA under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.

/
/
/
/
/
/
/

## VI.

## **ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Judgment is entered denying and dismissing the Petition with prejudice. A certificate of appealability is also denied.

DATED: April 28, 2016

                                            PAUL L. ABRAMS
                              UNITED STATES MAGISTRATE JUDGE